IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sharon Auxier,                        :
                    Petitioner        :
                                      :
        v.                            :       No. 228 C.D. 2023
                                      :
Trinity Health Corporation (Workers'  :
Compensation Appeal Board),           :
                    Respondent        :       Argued:  November 9, 2023

BEFORE:     HONORABLE CHRISTINE FIZZANO CANNON, Judge
            HONORABLE ELLEN CEISLER, Judge
            HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                              FILED:  January 9, 2024

        Sharon Auxier (Claimant) petitions this Court for review of a February 13,
2023 decision of the Workers' Compensation Appeal Board (Board), which affirmed
an order by workers' compensation judge (WCJ) Tina Marie Rago following a Board
remand.  In a previous order, dated February 22, 2021, WCJ Geoffrey Lawrence
granted Claimant's claim petition and awarded costs and fees pursuant to Section
440(a) of the Workers' Compensation Act (Act).[1]  The Board reversed in part on the
ground that the award of full costs and fees was unwarranted, and remanded for a
recalculation of the amount owed by Trinity Health Corporation (Employer).
Claimant argues that the Board's remand decision improperly encroached on WCJ

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of February 8, 1972, P.L.
25, 77 P.S. § 996(a).  Section 440(a) of the Act provides that when an employer unreasonably
contests a claim, the employee or his dependent, in whose favor the matter at issue has been finally
determined, shall be awarded "a reasonable sum for costs incurred for attorney's fee, witnesses,
necessary medical examination, and the value of unreimbursed lost time to attend the
proceedings."

Lawrence's discretion over questions of credibility and evidentiary weight. After review, we reverse the Board and reinstate WCJ Lawrence's order.

## I. Background

On February 27, 2019, Claimant filed a Claim Petition seeking disability benefits pursuant to the Act.[2] See Certified Record (C.R.), Item No. 2. Therein, Claimant alleged that she sustained an injury on October 10, 2017, in the course of her employment with Employer, as the result of an Employer-provided desk chair that was allegedly ill-suited for sustained sitting. *Id.* The Claim Petition further alleged that one of Employer's own doctors administered "an injection into [Claimant's] spine [that] greatly increased the pain and is causing radicular pain down the leg." *Id.* The remedy sought was compensation from November 1, 2017, onward. *Id.*

Employer had issued a medical-only Temporary Notice of Compensation Payable on November 30, 2017, but, on December 15, 2017, followed with a Notice Stopping Temporary Compensation, asserting that the injury was not work-related. C.R., Item No. 8, WCJ Decision, 5/1/2020, Findings of Fact (F.F.) Nos. 3-4.

In support of her Claim Petition, Claimant presented the expert testimony of Drs. Miteswar Purewal and Martin Pieretti, as well as her own fact testimony. In its defense, Employer presented the expert testimony of Dr. John Donahue, who performed an independent medical examination (IME) of Claimant, and the fact testimony of Tracy Tyler, Claimant's former supervisor.

---

[2] Claimant had previously filed a Claim Petition on January 27, 2018, which WCJ Lawrence allowed to be withdrawn, without prejudice, at the request of Claimant's counsel. See C.R., Item No. 35.

2

## A. Claimant's Evidence

At an April 24, 2019 deposition, Claimant testified that she began working in February 2017, as a home health liaison at Mercy Philadelphia Hospital, which is owned and managed by Employer. C.R., Item No. 21, Auxier Dep., 4/24/2019, at 5. Claimant's workday typically lasted 10 hours, of which 7 or 8 were spent sitting at a computer. *Id*. at 11. The chair in which Claimant sat was "old [and] very worn," and lacked cushioning. *Id*. Beginning in October, 2017, Claimant began experiencing pain on the left side of her lower back. *Id*. Immediately suspecting the chair as a cause due to her lack of prior back pain history, Claimant reported the issue to her then-supervisor. *Id*. at 14. Dr. Pieretti, who also worked for Employer, ordered a computerized tomography (CT) scan of Claimant's back. *Id*. at 20. Based on the scan's results, Dr. Pieretti referred Claimant to a Dr. Menachem Meller, an orthopedist. *Id*. at 24. Viewing the results of the CT scan with Claimant, Dr. Meller opined that Claimant was afflicted with Bertolotti's Syndrome, a rare, congenital condition affecting the spine. *Id*. at 24.

Dr. Meller also referred Claimant to Dr. Gerald Berry, a radiologist, who administered a pain relief injection into Claimant's lumbar spine on November 27, 2017. *Id*. at 27. Rather than alleviate Claimant's pain symptoms, the injection inaugurated a period of "horrific" experiences for her, which included episodes of "excruciating" pain, numbness, immobility, and incontinence. *Id*. at 27-29. Though they became less severe, the symptoms persisted at the time of Claimant's testimony. *Id*. at 29. Unable to work, Claimant remained at home and received a prescription for Vicodin to alleviate her pain. *Id*. at 30.

On December 15, 2017, Employer notified Claimant that it was denying her workers' compensation claim on the ground that her Bertolotti's Syndrome, not the

work chair, was the cause of her disability. *Id*. at 32. Consequently, Claimant briefly relied on short-term disability payments, for which she paid, followed by long-term disability benefits funded by Employer. *Id*. at 39-40. Also because of the claim denial, Claimant stopped her appointments with Dr. Pieretti and began visiting Dr. Purewal, whose treatment was more affordable. *Id*. at 36.

Claimant returned to work in July 2018, and was promoted to case manager on December 3, 2018. *Id*. at 40-41. In that position, Claimant did considerably more walking around the hospital, and considerably less sitting, than previously. *Id*. at 41. Due to repeated absences caused by various medical issues, Claimant had been reprimanded for poor attendance, and, at the time of her testimony, feared that her employment would soon be terminated as a result.[3] *Id*. at 43.

Dr. Pieretti first testified at a June 14, 2019 deposition taken by Claimant. *See* C.R., Item No. 22, Pieretti Dep., 6/14/2019. In his testimony, Dr. Pieretti acknowledged that he had worked as Employer's "Medical Director of Employee Health" since August 2017. *Id*. at 6. After a brief *voir dire*, Dr. Pieretti refused to answer almost all questions posed by Claimant's counsel; rather, Employer's counsel repeatedly interrupted to state that Employer objected to the question, without providing a basis for its objections. *See generally id*. at 10-26. Dr. Pieretti then repeatedly stated that he was only present at the deposition to authenticate documents that he had generated, not to appear as a medical expert. *Id*.

In response to Dr. Pieretti's near-complete refusal to answer questions during his deposition testimony, WCJ Lawrence issued a July 26, 2019 interlocutory order

---

[3] Claimant testified a second time at an October 22, 2019 hearing before the WCJ. *See* C.R. Item No. 20, Hr'g Tr., 10/22/2019, at 51-65. Claimant stated that she began working for Southeastern Home Health on June 3, 2019, as a home health liaison. *Id*. at 61. In that position, Claimant earned a higher salary than she had earned from Employer. *Id*. at 62.

compelling Dr. Pieretti to testify again at a hearing before WCJ Lawrence as "to all aspects of his treatment and care of [C]laimant, including any conclusions or opinions he reached as to diagnosis, causation, treatment and the like." C.R., Item No. 6. Noting the potential conflict of interest arising from Dr. Pieretti's role as both treating physician and employee of Employer, WCJ Lawrence also prohibited the doctor from engaging in any *ex parte* communications with Employer's counsel. *Id.*

Following the interlocutory order, Dr. Pieretti testified at a hearing before WCJ Lawrence on October 22, 2019. See C.R., Item No. 20, Hr'g Tr., 10/22/2019. Dr. Pieretti recalled that his first appointment with Claimant occurred on November 1, 2017. *Id.* at 10. Following the examination, Dr. Pieretti diagnosed Claimant with sacral pain, and ordered an ergonomic evaluation of her workspace. *Id.* at 10-11. Following complaints of increased pain as well as incontinence at a December 4, 2017 appointment, Dr. Pieretti ordered Claimant out of work. *Id*. at 14-15. Dr. Pieretti's last appointment with Claimant occurred on December 13, 2017, at the conclusion of which Dr. Pieretti again recommended that she remain off work. *Id.* at 15. Dr. Pieretti acknowledged never indicating in his treatment notes that Claimant's symptoms were caused by anything other than a work injury. *Id*. In addition, Dr. Pieretti acknowledged that he recommended the purchase of a new work chair, following the ergonomic evaluation that he ordered. *Id*. at 38.

Notwithstanding his earlier opinion, Dr. Pieretti testified that he later conducted some "additional research" on Claimant's case, and formed an opinion that her injury was not work-related. *Id*. at 19-20. Thus, Dr. Pieretti was unable to state within a degree of reasonable medical certainty that Claimant's work chair was the cause of her pain symptoms, rather than Bertolotti's Syndrome. *Id*. at 28. On redirect, Dr. Pieretti acknowledged that he had reviewed the matter privately with

Employer's counsel in preparation for his testimony, in direct violation of the July 26, 2019 interlocutory order. *Id*. at 37.

Testifying at a July 2, 2019 deposition, Dr. Purewal recalled that he first saw Claimant on January 9, 2018. C.R., Item No. 23, Purewal Dep., 7/2/2019, at 10. Dr. Purewal testified that he has since treated Claimant on at least a dozen occasions. *Id*. On direct, Dr. Purewal agreed that Claimant suffers from Bertolotti's Syndrome. *Id*. at 11. Dr. Purewal dismissed the suggestion that Claimant's work chair was unrelated to her pain symptoms, and explained that the work chair was an aggravation of the preexisting Bertolotti's Syndrome. *Id*. Dr. Purewal opined that Claimant's condition was further aggravated by the injections she received from Dr. Berry. *Id*. at 32.

**B. Employer's Evidence**

Testifying at a September 15, 2019 deposition, Dr. Donahue recalled that he performed an IME of Claimant on May 28, 2019, at Employer's request. See C.R., Item No. 30, Donahue Dep., 5/28/2019. Following his evaluation, Dr. Donahue opined that there was "no evidence of any work-related injury, because there is no evidence of any injury." *Id*. at 21. Asked to list any treatments or restrictions required by Claimant's condition, Dr. Donahue responded that "she does not require any treatment," and reiterated his belief that "[t]here is no injury." *Id*. Rather, Dr. Donahue attributed Claimant's pain symptoms to Bertolotti's Syndrome, which, he explained, "frequently becomes symptomatic . . . early in life, like latter 20s or early 30s." *Id*. However, Dr. Donahue acknowledged on cross-examination that the disability would be work-related if Claimant's symptoms began while she sat for long periods in a hard chair at work. *Id*. at 47. Dr. Donahue explained that he did

6

not reach that conclusion because he was not given documentation indicating a work injury. *Id*.

At a September 5, 2019 deposition, Ms. Tyler stated that she was the Manager of Care Coordination at Mercy Philadelphia Hospital. C.R., Item No. 29, Tyler Dep., 9/5/2019, at 5. In that capacity, Ms. Tyler was Claimant's direct supervisor when Claimant began working in her new position on December 3, 2018. *Id*. at 7. Upon her hiring, Claimant was subject to a 90-day introductory period, which, Ms. Tyler recalled, was extended by 60 days on February 22, 2019, due to several instances of lateness. *Id*. Ultimately, Ms. Tyler notified Claimant in an April 25, 2019 letter that Claimant's employment was terminated for failure to complete her introductory period satisfactorily.[4] *Id*. at 6.

### C. The WCJ's Decision and Subsequent Developments

In a May 1, 2020 decision, WCJ Lawrence granted the Claim Petition, finding that "Claimant has met her burden of proof . . . that she sustained a disabling work-related injury." C.R., Item No. 8, WCJ Decision, 5/1/2020, Conclusion of Law (C.L.) No. 2. Finding Dr. Donahue's opinion not credible, WCJ Lawrence explained that the record contradicted Dr. Donahue's assertion that he was never provided with documentation of a work-related injury. *Id*., F.F. No. 20(k). In addition, WCJ Lawrence noted Dr. Donahue's "grudging concession" that Claimant would have

---

[4] In addition to the above testimony, Employer submitted records from the Whitpain Township Police Department, which indicated that Claimant was arrested on July 14, 2019. See C.R., Item No. 31. The police report explained that Claimant was involved in an altercation with a female companion of Claimant's ex-husband. *Id*. Claimant was subsequently charged with simple assault, harassment, and disorderly conduct. *Id*.

7

suffered a work-related injury if her pain symptoms began after long periods of being seated in the chair at work.[5]  *Id.*, F.F. No. 20(n).

WCJ Lawrence credited Dr. Purewal's "clear and logical" testimony, noting that Dr. Purewal's opinions were corroborated by Dr. Pieretti's contemporaneous records indicating a work-related injury.  *Id.*, F.F. No. 20(a)-(b).  WCJ Lawrence also found Ms. Tyler's testimony credible, but remained unconvinced that Claimant was terminated due to misconduct.[6]  *Id.*, F.F. No. 21.  Thus, WCJ Lawrence ordered temporary total disability benefits to commence as of October 10, 2017.  *Id.*, Order. Said benefits were suspended as of June 3, 2019, the date when Claimant began her new employment.[7]  *Id.*

Finally, WCJ Lawrence determined that Employer failed to meet its burden of proof that its contest was reasonable.  *Id.*, C.L. No. 4.  Pursuant to Section 440 of the Act, WCJ ordered Employer to pay a *quantum meruit* fee of $12,025.00 to Claimant's counsel.  *Id.*, Order.

---

[5] WCJ Lawrence also explained that Employer submitted Claimant's arrest records to support its allegation that Claimant's criminal activity "is inconsistent with her claim of ongoing physical disability related to her back."  C.R., Item No. 8, WCJ Decision, 5/1/2020, F.F. No. 23. WCJ Lawrence "accorded little weight" to that evidence, rejecting the contention that "momentarily assaulting someone in a fit of rage disproves the evidence of a painful back condition."  Id., F.F. No. 23(a).  At any rate, WCJ Lawrence noted, the incident occurred more than a month after Claimant obtained new employment with Southeastern Home Health, placing it well outside the period of alleged disability.  *Id.*, F.F. No. 23(c).

[6] The circumstances surrounding Claimant's dismissal are significant because workers' compensation benefits are forfeited if a claimant's employment is shown to have been terminated for bad faith or misconduct. *Vista Int'l Hotel v. Workers' Comp. Appeal (Daniels)*, 742 A.2d 649, 658 (Pa. 2010).

[7] WCJ Lawrence explained that Claimant was not constantly disabled during the period in question, but sustained "periods of total and partial disability with periods of suspension," in accordance with wage records submitted by Employer.  C.R., Item No. 8, WCJ decision, F.F. No. 24(b).

Employer appealed to the Board, which affirmed the WCJ in part, and vacated and remanded in part. C.R., Item No. 11, Board Op., 2/22/2021, at 10. The Board affirmed with specific regard to the Claim Petition, concluding that WCJ Lawrence's credibility determinations were supported by substantial evidence. *Id*. at 8. However, the Board also concluded that WCJ Lawrence erred in awarding counsel fees "as though [Employer's] contest was wholly unreasonable." *Id*. The Board explained that, at the outset of Claimant's symptoms, there was a genuine issue as to the etiology of Claimant's injury and the duration of her disability. *Id*. Thus, the Board determined that Employer's contest was only unreasonable from November 27, 2017, the date of the pain injection by Dr. Berry, until July 2018, when Claimant returned to work for Employer. Board Op. at 10. The Board explained that when an employer "unreasonably contests a particular issue but presents a reasonable contest as to other aspects of the litigation, attorney's fees are to be assessed in an amount attributable to litigation of that issue, not the entire case." C.R., Item No. 11, Board Op., 2/22/2021 (citing *Pa. State Univ. v. Workers' Comp. Appeal Bd. (Sox)*, 83 A.3d 1081, 1090 (Pa. Cmwlth. 2013)).

Finding that Employer's contest was partially unreasonable (in that Claimant unquestionably suffered a work-related injury as a result of her prolonged sitting in the Employer-provided work chair) and partially reasonable (in that Claimant's Bertolotti's Syndrome raised a genuine question as to the cause of her disabling back pain), the Board vacated the $12,025.00 award of quantum meruit counsel fees. *Id*. at 9. The Board remanded with the instruction that a WCJ was to recalculate fees in accordance with its opinion. *Id.*

On September 9, 2022, the parties signed a stipulation of facts. C.R., Item No. 33. Therein, the parties agreed that, under the instructions given in the Board's

decision, Claimant's counsel was entitled to $1,525.00, a $10,500.00 reduction from the $12,025.00 awarded by WCJ Lawrence. *Id.* ¶ 4. The stipulation of facts also acknowledged that Claimant retained the right to file an appeal of the Board's decision. *Id.* ¶ 6.

Sometime after issuing his decision in this case, WCJ Lawrence retired. Employer's Br. at 8. The case was reassigned on remand to WCJ Tina Marie Rago, who adopted the parties' stipulation as her own factual finding. C.R., Item No. 13, WCJ Decision, 9/14/2022, F.F. No. 1. Accordingly, WCJ Rago found that Claimant was entitled to just $1,525.00, the figure agreed upon in the stipulation of facts. Id., C.L. No. 1. Claimant appealed to the Board, which affirmed and finalized its prior ruling. See C.R., Item No. 16. This appeal followed.[8]

## II. Issues

Claimant maintains on appeal that the Board overstepped its authority when it partially reversed WCJ Lawrence's award of counsel fees on the basis that Employer's contest was entirely unreasonable. Claimant submits two arguments in support of that contention. First, Claimant contends that the Board improperly encroached on the WCJ's exclusive province over questions of credibility and evidentiary weight. Second, Claimant argues that the Board's attempt to apportion the reasonableness of the contest using different periods of time "does not make sense" and "is not supported in the record." Claimant's Br. at 19.

---

[8] This Court's review is limited to determining whether the necessary findings of fact were supported by substantial evidence, constitutional rights were violated, or errors of law were committed. *Borough of Heidelberg v. Workers' Comp. Appeal Bd. (Selva)*, 928 A.2d 1006, 1009 (Pa. 2007). Where the issue presented involves a question of law, our standard of review is de novo and our scope of review is plenary. *Id.*

10

### III. Discussion

In "plain and unambiguous" language, Section 440(a) of the Act provides that when an employer unreasonably contests a claim, the employee or his dependent, in whose favor the matter at issue has been finally determined, shall be awarded a reasonable sum for costs incurred for attorney's fees. *Ramich v. Workers' Comp. Appeal Bd. (Schatz Elec., Inc.)*, 770 A.2d 318, 322 (Pa. 2001) (citing Section 440(a) of the Act, 77 P.S. § 996(a)). The reasonableness of the employer's contest raises a question of law, fully reviewable on appeal. *Essroc Materials v. Workers' Comp. Appeal Bd. (Braho)*, 741 A.2d 826 (Pa. Cmwlth. 1999). However, the question of whether a reasonable basis exists to contest liability depends on both the facts and legal issues involved. *Hansen v. Workers' Comp. Appeal Bd. (Stout Rd. Assocs.)*, 957 A.2d 372, 375 (Pa. Cmwlth. 2008). The burden of proving a reasonable contest is on the employer, and unless the employer establishes that its contest was prompted to resolve a genuinely disputed issue, the court will presume that the contest was unreasonable. *Essroc Materials*, 741 A.2d at 826-27.

Instantly, WCJ Lawrence found that Employer failed to meet its proof of a reasonable contest, as it had "no basis to deny that a work-related injury occurred when it stopped temporary compensation and issued a denial on December 15, 2017." C.R., Item No. 8, WCJ Decision, 5/1/2020, F.F. No. 24(h). Despite Dr. Pieretti's consistent indications that Claimant was suffering from a work-related injury, WCJ Lawrence explained, the person responsible for payment of the claim "injected [his or her] own medical conclusions into the process," and unreasonably denied the claim. *Id.* When Employer engaged in an unreasonable contest, according to WCJ Lawrence, Claimant was forced to retain counsel and "suffer the expense and delay of litigation." *Id.* WCJ Lawrence ruled that the opinions later

11

formed by Drs. Donahue and Pieretti regarding Bertolotti's Syndrome did not retroactively make the contest reasonable. *Id.*

On appeal, Claimant maintains that the Board "should never have substituted [its] [j]udgment in place of the Decision reached by the WCJ that [Employer's] contest was entirely unreasonable throughout the course of the litigation." Claimant's Br. at 21. While acknowledging that the reasonableness of an employer's contest raises a question of law, Claimant argues that "the underlying princip[le] established by years of case law[] provides that the WCJ has *complete authority* over questions of credibility" and evidentiary weight. *Id.* (emphasis in original). Since the WCJ's conclusions regarding Employer's unreasonable contest sprang directly from his factual findings, the Board's disturbance of the WCJ's conclusions represents an incursion into the WCJ's credibility determinations, according to Claimant. Furthermore, Claimant argues, it is not reasonable to suppose that Employer's unreasonable contest "suddenly turned reasonable" in June 2018, when Claimant returned to work. *Id.* at 26.

Claimant's arguments are persuasive. The Board's sole basis for determining that Employer had any reasonable contest is that Claimant's Bertolotti's Syndrome was preexisting to the work injury. However, it is well settled that an employer is liable for an employee's disability when that disability is caused by a combination of work-related *and non-work-related factors*, so long as the work-related cause is a substantial contributing factor to the disability. *Gumm v. Workers' Comp. Appeal Bd. (Steel)*, 942 A.2d 222, 230 (Pa. Cmwlth. 2008) (emphasis added). As explained by WCJ Lawrence in his decision, Employer was immediately aware that work conditions were causing or, at a minimum, substantially contributing to, Claimant's lower back pain. Thus, the Board's conclusion that there was a "genuine[ly]

12

disputed issue as to the etiology of the injury," C.R., Item No. 11, Board Op., 2/22/2021, at 9, is without adequate support.

For similar reasons, we agree with Claimant that the Board's effort to reapportion the award of counsel fees on a *pro rata* basis was arbitrary and without foundation. Contrary to the Board's determination that Employer's contest became unreasonable on the day that Dr. Berry administered the pain-relief injection, Employer had known for several weeks already of the work-relatedness of Claimant's injury. By the same token, there is no legitimate basis to conclude that Employer's contest became reasonable once again in July 2018, when Claimant temporarily returned to work.[9] Since Employer engaged in an unreasonable contest from the outset, and continued to engage in one until Claimant was forced to pursue the present litigation, we conclude that the Board's prorated reduction of counsel fees was unwarranted.

## IV. Conclusion

While the issue of a contest's reasonableness raises a question of law, our case law instructs that the question is a fact-dependent one. WCJ Lawrence's conclusion that Employer engaged in an unreasonable contest follows logically from his factual

---

[9] We note that WCJ Lawrence awarded wage loss benefits from October 10, 2017 (the deemed date of Claimant's injury) to June, 2, 2019 (the start date of her new employment with Southeastern Home Health). This appears from the record to be an extraordinarily long period, given that Claimant was only out of work for two portions thereof: from Dr. Pieretti's December 4, 2017 off-work order until her July, 2018 return, and again for approximately six weeks following her April 25, 2019 termination until her start at Southeastern Home Health.

In its Brief to this Court, Employer correctly points out that questions may be raised as to the duration of Claimant's disability. Employer's Br. at 15-16. Yet, the sole issue raised by Employer on appeal from WCJ Lawrence's decision was whether counsel fees should have been awarded. *See* C.R., Item No. 9. It is well settled that issues not raised before the Board are waived on appeal to this Court. *Mushow v. Doyle and Roth Mfg. (Workers' Comp. Appeal Bd.)*, 279 A.3d 633, 639 (Pa. Cmwlth. 2022). Accordingly, any argument that Employer could have made as to the accuracy of the long disability period determined by WCJ Lawrence has been waived.

finding that Employer was aware of its causal role in Claimant's injury just days after it occurred. Since that finding is firmly supported by substantial evidence in the record, we reverse the Board's order and reinstate WCJ Lawrence's decision.

_____

ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sharon Auxier,                    :
           Petitioner        :
                                   :
        v.                      :    No. 228 C.D. 2023
                                   :
Trinity Health Corporation (Workers'    :
Compensation Appeal Board),           :
              Respondent       :

## **O R D E R**

AND NOW, this 9th day of January, 2024, the order of the Workers' Compensation Appeal Board in the above-captioned matter, dated February 13, 2023, is REVERSED. The previous order of the workers' compensation judge in this matter, dated July 26, 2019, is REINSTATED.

_____
ELLEN CEISLER, Judge